# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

––––––––––––––––––

Nº 07-CV-2464 (JFB)

––––––––––––––––––

NANCY WRIGHT,

Plaintiff,

VERSUS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

––––––––––––––––––

**MEMORANDUM AND ORDER**
December 1, 2009

––––––––––––––––––

JOSEPH F. BIANCO, District Judge:

Plaintiff Nancy Wright ("plaintiff" or "Wright") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of Social Security, dated May 25, 2006, that reopened and revised a previous fully favorable decision, and found that plaintiff was not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). Specifically, the Commissioner found that new evidence showed that plaintiff had knowingly made incorrect or incomplete statements in connection with her previous application for DIB and that plaintiff was not actually disabled.

Presently before the Court is the defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendant's motion for judgment on the pleadings and affirms the decision of the Administrative Law Judge ("ALJ").

## I. BACKGROUND

### A. Facts

#### 1. Vocational and Other Evidence

Plaintiff is a forty-three-year-old high school graduate who attended college for three years and worked as a police officer for

the Suffolk County Police Department. (R.[1] 37, 75-78.) On May 27, 2003, she experienced a workplace injury, during which she felt a pull in her neck on the right side. (R. 159.) The injury resulted in extreme neck pain that radiated into her left arm, lower back pain that radiated into her left leg, and numbness and tingling in her left leg. (R. 131-33.) This pain also caused plaintiff severe headaches and difficulty sleeping. (R. 159.) Plaintiff had a magnetic resonance image ("MRI") study performed and learned that she has degenerative disc disease of the cervical and lumbar spines. (R. 37, 141-42.)

### 2. Medical Evidence

#### a. Treating Physicians

Plaintiff was initially treated by Dr. Salvatore Palumbo in July 2003. The doctor found that plaintiff had tenderness and diminished range of motion in her lower back, but her neurological signs were normal. (R. 159.) Dr. Palumbo prescribed daily muscle relaxers for plaintiff. (R. 160.) Dr. Palumbo also recommended physical therapy for plaintiff, and in August 2003, she had an appointment with physical therapist Dr. Luis Fandos. (R. 195-97.)

Dr. Fandos reported that plaintiff had myofascial pain syndrome with cervical and lumbar radiculopathy, attended by pain, trigger points, and positive straight leg raising on the left. (R. 37, 196-97.) Dr. Fandos noted that plaintiff did not respond well to conservative therapies, (R. 197,) so his recommended treatment for plaintiff included nerve root blocks, physical therapy, and a

TENS unit, a device that sends electrical impulses to block pain signals in certain parts of the body. (R. 197.)

Plaintiff attended subsequent monthly appointments with Dr. Fandos throughout 2004. (R. 187-89, 192.) At those examinations, plaintiff complained of pain and limited daily activities. (R. 187-89.) Dr. Fandos concluded that plaintiff could only sit, stand, or walk two hours total in an eight-hour workday. (R. 177-78.) Dr. Fandos also noted that plaintiff could lift up to five pounds for one to two hours per day. (R. 177.) In September 2004, Dr. Fandos considered plaintiff "totally permanently disabled for the duties as a police officer." (R. 188.)

#### b. Consulting Physicians

Plaintiff attended a consultative examination with Dr. Samir Dutta on March 25, 2004. (R. 163.) Dr. Dutta assessed that plaintiff had mild limitations in standing, walking, and carrying weight in her right hand, and a moderate limitation for carrying weight in her left hand. (R. 165.) He also noted that she had mild limitations with repetitive and prolonged fine motor activities with both hands. (*Id.*) He diagnosed plaintiff with a herniated disc with left lumbar root radiculopathy, a bulging disc with left cervical root radiculopathy, and bilateral carpal tunnel syndrome. (*Id.*)

### B. Procedural History

#### 1. Initial Application

Plaintiff applied for DIB on January 21, 2004, alleging disability due to herniated discs in her lower back, bulging discs in her neck, pinched nerves, and carpal tunnel syndrome in both of her arms. (R. 75-78.) Her application

---

[1] References to "R." are to the Administrative Record in this case.

was denied on April 26, 2004, (R. 28-31), and she timely requested a hearing before an ALJ. (R. 32.) ALJ Linda Stagno considered plaintiff's claim and, without holding a hearing, issued a fully favorable decision on August 19, 2004. ALJ Stagno found that Wright was entitled to disability based upon severe impairments to the cervical and lumbosacral spines. (R. 33-40; Complaint ¶ 4.) The ALJ found that Wright had been disabled since May 27, 2003. (R. 33-40.)

### 2. Supplemental Evidence Submitted to the ALJ

Due to plaintiff's insistence that her severe pain-related limitations prevented her from working, in September 2004 plaintiff's employer, the Suffolk County Police Department, began surveillance and videotaping of plaintiff to determine the extent of her limitations. (R. 50-66.) According to the Suffolk County Police Department's internal correspondence, during her visits to the Police Surgeon, Wright had stated that she was unable to lift a gallon of milk, often tripped due to poor balance, was unable to stoop, bend, or reach, and could sit and stand for no more than five to ten minutes. (R. 63.)

According to the surveillance reports, in September 2004, officers observed and videotaped plaintiff walking around a Home Show at Nassau Coliseum, three days after she had represented to the Police Surgeon that she was unable to sit or stand for more than five minutes and could not walk more than one-hundred feet. (R. 64.) On October 7, 2004, plaintiff was observed and videotaped loading shopping bags into her car while running errands. (*Id.*) On October 15, 2004, she was observed attending a "make up" party in a beauty salon, where she was videotaped

bending, stooping, lifting a stool over her head, and lifting a child. (R. 65.) Five days later, on October 20, 2004, plaintiff was observed shopping and running errands throughout the day. The surveillance videotape depicts plaintiff driving, walking, and bending with no signs of pain or disability. (*Id.*)

On three separate occasions in late October and early November 2004, plaintiff was observed and videotaped coaching a girls' soccer team. During the course of a three-hour period, she was observed walking, running, bending, crouching, and squatting without difficulty. (R. 65-66.) She was also observed lifting items, swinging her arms, carrying equipment, using a mechanical device to draw lines on the soccer field, and kicking a soccer ball—all with no signs of pain or disability. (*Id.*) On October 29, 2004, plaintiff was observed and videotaped as she arrived and departed a Functional Capacity Test in Bay Shore, New York. On those occasions, plaintiff walked slowly while entering and exiting the building. (R. 65.)

On January 26, 2005, plaintiff was observed and videotaped running errands throughout the day. During the day, plaintiff was seen walking, running, and standing without any sign of disability or pain. (R. 57.) Later that day, plaintiff was also videotaped entering Police Headquarters for a meeting. Wright walked with a "pronounced limp" while entering the building. (*Id.*)

In March 2005, at the request of the Suffolk County Police Department, Dr. Noah Finkel reviewed plaintiff's file and the video surveillance tapes of her daily activities. (R. 68.) Dr. Finkel observed that, in the videotapes, Wright was seen performing a wide range of activities "without evidence of

restricted motion or evidence of associated pain." (R. 69.) He concluded that Wright had no functional disability and was capable of returning to work full time as a police officer. (*Id.*) Also in March 2005, plaintiff saw Dr. Fandos, who advised her that there was "evidence of a tear in the disc" in her back and recommended a nucleopasty. (R. 232.)

Plaintiff was next examined by Dr. Craig Rosenberg in June 2005. (R. 232-35.) He assessed that plaintiff had chronic neck and lower back pain with associated myofascial pain, degenerative disc disease with no clinical evidence of lumbar radiculopathy, and cervical spondylosis with no clinical evidence of cervical radiculopathy. (R. 235.) Dr. Rosenberg opined that plaintiff was capable of returning to work in a limited duty capacity. (*Id.*) He concluded that she was capable of performing sedentary light-level work for eight hours per day. (*Id.*)

Plaintiff also underwent a neurological evaluation with Dr. E. Kojo Essuman in June 2005. (R. 236-39.) Dr. Essuman's findings on neurological examination of plaintiff were "entirely normal, negative, and without objective focality." (R. 238.) He opined that there was "no clinical correlation between the claimant's subjective symptoms and the objectively normal findings on exam." (*Id.*) Dr. Essuman recommended that plaintiff continue sedentary employment for three months, with re-examination. (R. 239.)

In June 2005, plaintiff underwent a functional capacity evaluation, which indicated that she was capable of performing light sedentary work for an eight-hour workday. (R. 229.) The test also indicated that she did not appear to have obvious symptom exaggeration. (*Id.*) Around this time, plaintiff returned to work on light duty,

but several months later began to have increased symptoms and was forced to stop working again on November 30, 2005.

In July 2005, Dr. Fandos observed the surveillance video tapes that the Suffolk County Police Department had prepared. He concluded as follows:

> On the tapes the patient can clearly perform physical activities including running, standing, bending, picking up heavy objects, among others. These activities could not be perform[ed] by a patient with the degree of disability that she has been claiming. I have performed several procedures on this patient based on her subjective symptoms. I now feel that if I had been aware of the patient['s] physical capacity I would probably [have] recommend[ed] only conservative approaches. After the last office visit I have requested the authorization to perform a nucleoplasty due to the lack of response to the other procedures. At this point I do not feel that this procedure is [necessary] and her degree of disability is minimal if any. I feel that she can go back to her full duties as a police officer.

(R. 71.)

Plaintiff was evaluated by Dr. Palumbo on December 9, 2005. Dr. Palumbo examined a recent MRI performed on plaintiff and concluded that there remained some mild degeneration of her lumbar spine, but no significant neural compression. (R. 240.) He concluded that she should continue pain management evaluation and ongoing physical therapy and recommended chiropractic manipulation and pain acupuncture for

plaintiff. (*Id.*) Dr. Palumbo further suggested that plaintiff would be an excellent candidate for nucleoplasty. (*Id.*)

### 3. Reopened and Revised Decision

The Social Security Administration's Office of the Inspector General ("OIG") subsequently informed ALJ Stagno that it had conducted an investigation and obtained new evidence that was unavailable when the fully favorable decision was issued. (R. 15.) Specifically, the ALJ was presented with narrative descriptions and videotape evidence of plaintiff's physical activities, as observed by her employer, the Suffolk County Police Department, and an affidavit from Wright's treating physician, Luis M. Fandos, M.D., changing his medical opinion. (*Id.*)

As a result of receiving this new evidence, ALJ Stagno held a hearing to determine whether plaintiff's prior fully favorable decision should be reopened in accordance with Section § 205(u) of the Social Security Act, which provides that evidence shall be disregarded "if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u). A hearing was held on December 21, 2005, at which plaintiff appeared and testified, and the new evidence was presented. (R. 15.)

At the hearing, plaintiff testified about the pain that she experienced as a result of her injuries, as well as limitations on her daily activities. She testified that on average, she would spend five or six days a month in bed due to her pain. (R. 259.) Wright stated that she used to be very active, participating in several athletic activities on a regular basis. (R. 260.) After her injury, she claimed that she told her daughters that they had to pick

which activity they wanted her to participate in with them, since she was no longer able to perform all the activities in which she previously participated with them. (*Id.*) Wright claimed that her children picked soccer, so she remained a coach for her daughters' soccer teams. (R. 261.) Plaintiff also stated that she would "push" herself physically so that she could participate in activities with her children. (R. 262.) She claimed that she could perform activities such as those she was observed performing on videotape only for a couple of hours when medicated. (*Id.*) Plaintiff told the ALJ that she only became more active after she received nerve root blocks beginning in April 2004, (R. 264), and that her doctors had instructed her to be more active, so her behavior was the result of following their instructions. (R. 269.)

On May 25, 2006, ALJ Stagno reopened her April 26, 2004 decision and found that plaintiff was not disabled. (R. 12-25.) The Appeals Council denied review of the ALJ's reopened and revised decision on April 20, 2007. (R. 4-7.) In September 2006, plaintiff returned to work initially on light duty, and then back to full duty. She has continued to work to date.

### C. The Instant Appeal

Wright filed her complaint in this action on June 20, 2007. Along with her complaint, plaintiff submitted additional evidence to the Court, including deposition transcripts of Dr. Fandos, Dr. Palumbo, and Dr. Edward M. Weiland.

The supplemental testimony of Dr. Fandos that was submitted by plaintiff was taken in connection with plaintiff's workers' compensation case. In the testimony, Dr.

Fandos states that plaintiff "was encouraged to increase the level of activity as tolerated so if she was feeling better from the injections you would assume that she would be able to do more activities." (App.[2] A at 33.)

The additional testimony by Dr. Palumbo is taken from Dr. Palumbo's testimony in plaintiff's workers' compensation case on October 30, 2006. During examination, Dr. Palumbo noted that the nerve root injections received by plaintiff may have provided some short-term relief, enabling her to participate in more activities than she could previously. (*See* App. C at 44.) Dr. Palumbo also testified that he felt "misled" by plaintiff after seeing the surveillance video, and that, in his opinion, the activities plaintiff was seen performing were not consistent with the severity of her complaints. (*Id.* at 31-33, 41.) Dr. Palumbo also stated that after viewing the video, he thought plaintiff could still be disabled from her job as a police officer, but not from less strenuous types of work. (*Id.* at 34-35.)

Plaintiff also submitted deposition testimony of Dr. Edward M. Weiland with her complaint. (App. D.) Dr. Weiland stated that he had examined plaintiff in March 2004 and found no evidence of neurologic disability with reference to plaintiff's work-related injury. (*Id.* at 9-10.) He also stated that the surveillance videos of plaintiff reinforced his opinion regarding plaintiff's lack of a neurological disability. (*Id.* at 15.)

Plaintiff also submitted documentation concerning her additional medical treatment, including the lumbar nucleoplasty and facet

block injections performed on her. (*See* App. E.) Plaintiff also included a letter from Dr. Fandos, dated February 8, 2008, that stated:

> During the period from May 27, 2003 through September 7, 2006, given the patient's subjective complaints and MRI reports, I felt the patient was temporarily, totally disabled. She underwent a series of cervical and lumbar root blocks with minimal relief. At times when she tried to return to work during this time, I advised she work on a light duty status. The patient was seen on September 28, 2004 at which time she was stated to be totally permanently disabled, which was an error. The patient at that time was considered temporarily, totally disabled not totally permanently disabled.

(Pl.'s Mem. of Law, Ex. 1.)

On December 3, 2007, the defendant moved for judgment on the pleadings. On February 14, 2008, plaintiff submitted her memorandum of law in opposition to defendant's motion. This matter is fully submitted.

## II. DISCUSSION

### A. Applicable Legal Standards

#### 1. Standard of Review

A district court may only set aside a determination by an ALJ that is based upon legal error or not supported by substantial evidence. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)). The Supreme Court has defined "substantial evidence" in

---

[2] References to "App." are to the Appendix to plaintiff's complaint in this case.

Social Security cases as "more than a mere scintilla" and that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotations and citations omitted). Furthermore, "it is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, even if there is substantial evidence for the plaintiff's position. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey*, 145 F.3d at 111; *see also Jones*, 949 F.2d at 59 (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)).

In order to obtain a remand based on additional evidence, a plaintiff must present new evidence that: (1) is new and not merely cumulative of what is already in the record; (2) is material, in that it is relevant to the claimant's condition during the time period for which benefits were denied, probative, and presents a reasonable possibility that the additional evidence would have resulted in a different determination by the Commissioner; and (3) was not presented earlier due to good cause. *See Lisa v. Sec'y of the Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d.

Cir. 1991).

## 2. The Disability Determination

A claimant is entitled to disability benefits under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations establishing a five-step procedure for evaluating disability claims. *See* 20 C.F.R §§ 404.1520(a)(4), 416.920. The Second Circuit has summarized this procedure as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant

disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work.

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). The claimant bears the burden of proof with regard to the first four steps; the Commissioner bears the burden of proving the last step. *Brown*, 174 F.3d at 62.

The Commissioner "must consider" the following in determining a claimant's entitlement to benefits: "(1) objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience." *Id.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam)).

## B. Decision to Reopen the Case

The Court must first review the ALJ's decision to reopen plaintiff's case. If the decision was based upon correct legal standards and was supported by substantial evidence in the record as a whole, the Court will uphold the ALJ's decision. *See Balsamo*, 142 F.3d at 79. Based on the new evidence presented to the ALJ subsequent to plaintiff's fully favorable decision, the Court finds that the ALJ correctly reopened the case.

The Social Security Act provides that:

[t]he Commissioner of Social Security shall immediately redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

42 U.S.C. § 405(u)(1). "Similar fault" is involved with respect to a determination if:

(A) an incorrect or incomplete statement that is material to the determination is knowingly made; or

(B) information that is material to the determination is knowingly concealed.

*Id.* § 405(u)(2)(A)-(B); *see also Delikosta v. Califano*, 478 F. Supp. 640, 642 (S.D.N.Y. 1979) ("Fraud exists when a person makes or causes to be made a false statement or a misrepresentation of a material fact for use in determining rights to social security benefits. Similar fault exists when a person makes an incorrect or incomplete statement knowingly or material information is concealed knowingly. However, fraudulent intent is not required."). Such decisions may be reopened at any time due to fraud or similar fault. 20 C.F.R. § 404.988(c)(1). Fraudulent intent is not required in order for an ALJ to find

similar fault. *See Barone v. Bowen*, 869 F.2d 49, 51 (2d Cir. 1989) (citing Social Security Ruling 85-23).[3]

ALJ Stagno initially issued a fully favorable decision, finding plaintiff disabled since May 27, 2003 without holding a hearing. Subsequently, the ALJ was presented with evidence that suggested that plaintiff's injuries were not as severe as plaintiff had represented. The evidence suggested that plaintiff was capable of performing several activities that she had stated she was wholly unable to perform in her prior application for DIB. Plaintiff had represented that she could not stoop, bend, or reach, and that she could not sit or stand for more than ten minute periods. (R. 63-64, 92, 102, 138, 177-78, 221, 224, 226.) Plaintiff also alleged that she tripped often and drove very little and only when necessary. (*Id.*; R. 134)

The new evidence presented to the ALJ showed plaintiff performing a variety of activities that involved stopping, bending, reaching, driving, and standing for more than ten minutes at a time. The videotapes of plaintiff demonstrated her loading shopping bags into her car while running errands, (R. 64), and attending a party at which she was seen bending, stopping, and lifting a stool and child over her head. (R. 65.) Plaintiff was also videotaped driving and running errands throughout the course of several days. (*Id.*) Plaintiff was observed and videotaped while coaching soccer games. At these games she was seen lifting and carrying boxes, chairs, and equipment bags, and swinging or gesturing with her arms. (*Id.*) Wright was also observed bending, crouching, squatting, walking, and running without difficulty over the course of two to three hours at a time. (R. 65-66.) Plaintiff acknowledged that she had performed these activities. (R. 262.)

In addition, the ALJ was presented with additional medical testimony regarding the videotapes of plaintiff engaging in those activities. Dr. Essuman stated that he found "no clinical correlation between [plaintiff's] subjective symptoms and the objectively normal findings on exam." (R. 238.) Dr. Fandos stated that the activities plaintiff was seen performing in the videotapes "could not be perform[ed] by a patient with the degree of disability that [Wright had] been claiming." (R. 71.) Accordingly, the ALJ determined that plaintiff had knowingly made incorrect or incomplete statements and knowingly concealed information about the severity of her symptoms and their impact on her ability to function. (R. 19.)

_____

[3] The "similar fault" criteria are as follows:

(a) The changed event is material (*i.e.*, will change the SSI payments) and will create a new overpayment or enlarge an existing overpayment;
(b) A wide discrepancy exists between the new data and the data reported;
(c) The SSI recipient (or other person) knowingly completed an incorrect or incomplete report, knowingly concealed events or changes, or knowingly neglected to report events or changes that affect payments;
(d) The event (income, resource, etc.) can and will be verified;
(e) The event (income, resource, etc.) is clearly attributable to the SSI recipient (or the ineligible spouse, parent or sponsor of an alien in deeming situations); and
(f) The case does not involve intent to defraud.

*Barone*, 869 F.2d at 51, n.2 (citing Social Security Ruling 85-23).

The ALJ also determined that plaintiff's explanation of her ability to perform the activities seen on the videotapes was not credible.[4] (R. 19.) According to plaintiff, she had good days and bad days during the period in question. (R. 262; Pl.'s Mem. of Law ¶ 16.) Plaintiff also contended that on a good day, she would push herself to coach soccer games because her children wanted her to participate in their activities with them. (R. 262-64.) Despite these contentions, the videotapes demonstrated plaintiff performing these tasks without difficulty and did not indicate that plaintiff experienced any pain while engaging in these activities. (R. 65-66.) In addition, although plaintiff represented that she had "good days and bad days," on January 26, 2004, plaintiff was videotaped walking, running, and standing while running errands throughout the day without difficulty. (R. 65.) Later that day, when walking into Police Headquarters for a meeting, plaintiff walked with a "pronounced limp." (R. 57.) The ALJ also found that the videotapes documented plaintiff's activities over an extensive period of time and depicted plaintiff participating in a wide range of activities without difficulty, contrary to her assertions around this time.

Based on the surveillance tapes and medical testimony presented to the ALJ and the ALJ's determinations regarding plaintiff's credibility, there was substantial support for the ALJ's decision to reopen the case based upon reason to believe that plaintiff knowingly made "incorrect or incomplete statement[s]," that were material to the ALJ's prior fully favorable determination.

---

[4] The ALJ's determinations regarding plaintiff's credibility are discussed *infra*.

## C. Analysis of the ALJ's May 25, 2006 Decision

Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is the result of legal error. Specifically, plaintiff argues that she never alleged that she was a total invalid or was unable to perform any activities of daily living. Plaintiff contends that none of the activities she was videotaped performing were inconsistent with a finding that plaintiff had a disability that prevented plaintiff from engaging in substantial gainful activity for the period of time covered by the ALJ's initial fully favorable decision on August 19, 2004. As set forth below, the Court concludes that the ALJ's findings were supported by substantial evidence. Accordingly, the Court upholds the ALJ's decision that plaintiff was not disabled.

### 1. Disregarded Evidence

When redetermining benefits in a case that is reopened based on fraud or similar fault, "the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." 42 U.S.C. § 405(u)(1)(B). The ALJ disregarded certain evidence based on her determination that similar fault was involved in the provision of such evidence. Specifically, the ALJ concluded that:

> the prior decision issued August 19, 2004 must be reopened and the opinions/ assessments with respect to physical capacities, employability, incapacitation and disability offered prior to July 29, 2005 . . . by Dr. Fandos, by all other treating and consulting medical examiners and by a physical therapist, Mr. Kevin M.

Cerrone disregarded due to fraud or similar fault: herein similar fault inasmuch as the preponderance of the evidence—the surveillance videotapes and the information contained in Dr. Fandos's affidavit—demonstrates the claimant, when dealing with aforesaid practitioners prior to July 29, 2005, knowingly made incorrect or incomplete statements and knowingly concealed information (concerning the severity of her symptoms and the degree to which they affect her ability to function) material to the determination of disability.

(R. 19.) Thus, the ALJ disregarded this evidence because the surveillance videotapes demonstrated that plaintiff was capable of performing a variety of physical activities that she had claimed she was unable to perform. Furthermore, the ALJ disregarded certain medical evidence that was based on plaintiff's representations regarding pain. The Court finds that this was appropriate given the new evidence that contradicted the conclusions of Dr. Fandos and the plaintiff's testimony.

## 2. Five-Step Procedure

The ALJ applied the five-step procedure. The ALJ determined that plaintiff was not disabled, and therefore not entitled to benefits. (R. 12-25.) The ALJ found, at the second and third step of the sequential analysis, that plaintiff had severe impairments, specifically degenerative disc disease of the cervical and lumbosacral spine and a bilateral carpal tunnel syndrome, but that these severe impairments did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ further found that, while plaintiff was incapable of resuming her previous relevant skilled employment, she did retain the residual functional capacity to perform light and sedentary unskilled work presently existing in significant numbers in the national economy.

### a. Substantial Gainful Activity

At step one, the ALJ must determine whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). Substantial work activity is work activity that involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a), and gainful work activity is work usually done for pay or profit, 20 C.F.R. § 404.1572(b). Individuals who are employed are engaging in substantial gainful activity. The ALJ determined that with the exception of light-duty work performed for the Suffolk County Police Department from June 16, 2005 to November 30, 2005, plaintiff had not engaged in any substantial gainful activity since the date of her work-related injury, May 27, 2003. (R. 19.) Substantial evidence supports this finding and plaintiff does not challenge its correctness.

### b. Severe Impairment

If the claimant is not employed, the ALJ then determines whether the claimant has a "severe impairment" that limits her capacity to work. An impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c); *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R.

§ 404.1521.

The ALJ found that Wright is severely impaired with a degenerative disc disease of the cervical and lumbosacral spine and a mild bilateral carpal tunnel syndrome. (R. 19.) The ALJ found plaintiff's spinal impairment to be severe "inasmuch as it limits her ability to perform some work-related activities, such as lifting/carrying in excess of twenty pounds." (*Id.*) The ALJ further noted that physical examination performed by treating and consulting medical examiners yielded variable findings regarding plaintiff's reduced range of motion of the cervical and thoracolumbar spine, paraspinal and other muscular tenderness/spasm, trigger points, and inconsistently positive straight leg raising. (R. 20.) Substantial evidence supports the ALJ's finding that Wright's impairment is severe, and plaintiff does not challenge its correctness.

### c. Listed Impairment

If the claimant has such an impairment, the ALJ next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the ALJ will find the claimant disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 404.1520(c). The ALJ found that plaintiff's impairments, neither individually nor in combination, meet or equal any of the listed impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24.) The ALJ stated that the medical evidence regarding Wright's left grip strength did not include complaints of persistent numbness and tingling of the hands and fingers or muscle atrophy indicative of clinically significant carpal tunnel syndrome. (R. 20.) The ALJ also found that plaintiff's

medical examinations failed to demonstrate the "motor loss, muscular weakness, sensory and reflex loss indicative of significant nerve root compromised required to satisfy the requirements" of Section 1.04 A of the Listing of Impairments. (*Id.*) Plaintiff does not challenge the ALJ's finding that her impairment does not meet any of the listed impairments.

### d. Residual Functional Capacity and Past Relevant Work

If the claimant does not have a listed impairment, the ALJ determines the claimant's residual functional capacity, in light of the relevant medical and other evidence in the claimant's record, in order to determine the claimant's ability to perform her past relevant work. 20 C.F.R. § 404.1520(e). The ALJ then compares the claimant's residual functional capacity to the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the ability to perform her past relevant work, she is not disabled. *Id.* The ALJ found that plaintiff does not have the residual functional capacity to perform her past relevant work.

In determining plaintiff's residual functioning capacity, the ALJ disregarded the medical opinions and assessments with respect to plaintiff's physical capacities, employability, incapacitation and disability offered prior to July 29, 2005, due to the finding of "similar fault," involved in Wright's initial application for DIB. (R. 19.) As discussed *supra*, the ALJ properly disregarded this evidence. Disregarding this evidence, the ALJ found that plaintiff retained the ability to: "sit approximately six hours, stand/ walk approximately six hours, to occasionally lift/ carry and push/ pull up to

twenty pounds, and to frequently l[i]ft/ carry and push/ pull up to ten pounds during an eight-hour workday." (R. 20.) The ALJ also found that plaintiff still had the ability to perform other work-related activities, such as reaching, handling, fingering, and feeling. (*Id.*) In reaching this determination, the ALJ relied on the testimony and statements provided by several physicians, including plaintiff's treating physician, Dr. Fandos. Specifically, Dr. Fandos reviewed the videotapes of plaintiff that were taken by the Suffolk County Police Department and determined that "[t]hese activities could not be perform[ed] by a patient with the degree of disability that she ha[d] been claiming." (R. 71.) Dr. Fandos further opined that he did not feel that a nucleoplasty was necessary for plaintiff at that point, and "her degree of disability [was] minimal if any." (*Id.*)

The ALJ also provided justification for affording little weight to the opinion of Dr. Palumbo that plaintiff still suffered from incapacitating lower back pain. Medical opinions must be supported by, and be consistent with, other evidence in the record. *See Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). The ALJ found that Dr. Palumbo's opinion was belied by the minimal clinical findings present during Dr. Palumbo's December 9, 2005 evaluation of plaintiff and because the opinion was largely based upon plaintiff's representations regarding pain, which the ALJ did not find credible. (R. 21.) The record supports the ALJ's finding. The videotapes provided ample evidence of plaintiff engaging in a variety of physical activities, and plaintiff displayed no signs of pain or difficulty in those videos. Moreover, there was medical testimony to the contrary by Dr. Fandos and by Dr. Finkel, who stated that the videotapes demonstrated Wright performing a variety of activities "without

evidence of restricted motion or evidence of associated pain," (R. 69), and that Wright's disability was minimal, if any.

In an attempt to refute the contrary evidence regarding plaintiff's residual functioning capacity, plaintiff testified at the hearing about her symptoms and the activities in which she was able to participate. Plaintiff testified that she could only stand ten to fifteen minutes at a time, that her ability to walk varied, and that she can only sit for forty-five minutes to an hour at a time before she must change position. (R. 266.) The plaintiff also testified that she had "good days and bad days" and on a bad day, she would have to stay in bed all day. (R. 267-68.) Plaintiff further stated that she would "push herself" for her daughters, forcing herself to perform certain activities even though they caused her a great deal of pain. (*Id.*)

The ALJ found plaintiff's testimony regarding her pain not credible. Plaintiff objects to the ALJ's findings regarding plaintiff's credibility. Specifically, plaintiff alleges that the ALJ erred by disregarding plaintiff's subjective descriptions of the pain she experienced while engaging in certain activities. Plaintiff cites a Ninth Circuit case, *Vertigan v. Halter*, 260 F.3d 1044 (9th Cir. 2001), for the proposition that the ALJ erred by discrediting the plaintiff's complaints of pain. However, that case acknowledged that an ALJ may reject a plaintiff's testimony as long as the ALJ provides clear and convincing reasons for doing so. *Id.* at 1049. If a plaintiff claims to have symptoms of greater severity than that which is established by the objective medical findings, the ALJ may consider other evidence, such as plaintiff's daily activities, the nature, extent, and duration of the symptoms, and the treatment provided. *See* 20 C.F.R. §§ 404.1529(c)(3).

The ALJ here found that the videotapes provided sufficient evidence of plaintiff's activities over an extended period of time to justify a finding that plaintiff's testimony about her subjective pain was not credible. (*See* R. 22.)

"[W]here a claimant's subjective testimony is rejected, the ALJ must do so explicitly and specifically." *Kleiman v. Barnhart*, No. 03-CV-6035 (GWG), 2005 U.S. Dist. LEXIS 5826, at * 32 (S.D.N.Y. Apr. 8, 2005) (citing *Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (holding that where an ALJ rejects witness testimony as not credible, it must set forth the basis for this finding "with sufficient specificity to permit intelligible plenary review of the record")). In her opinion, the ALJ stated explicitly and specifically that plaintiff's "testimony with respect to her symptoms and attendant limitations is not credible." The ALJ explained how she reached this conclusion: she found that plaintiff's testimony was inconsistent with the physical activities that she was seen performing on the surveillance videotapes. (R. 22.) The ALJ further found that this proposition was buttressed by the testimony of Dr. Fandos that the activities performed by plaintiff "could not be perform[ed] by a patient with the degree of disability that she has been claiming." (R. 71.) Dr. Finkel also concurred with this conclusion, stating that plaintiff was seen in the videotapes performing a range of activities "without evidence of restricted motion or evidence of associated pain." (R. 69.)

The ALJ has an absolute duty and obligation to consider not only the plaintiff's testimony, but the record as a whole. *See Kendall v. Apfel*, 15 F. Supp. 2d 262, 266 (E.D.N.Y. 1998); *Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994). A

claimant's statements regarding pain do not conclusively support a finding of disability; to the contrary, the ALJ must consider whether the claimant's "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled."). There was substantial evidence to support the ALJ's finding that the plaintiff's testimony regarding her pain and limitations was not credible. The videotapes displayed plaintiff performing specific activities that she had alleged she was incapable of performing: bending, reaching, driving, and carrying heavy items. The videotapes also contained footage of plaintiff standing and engaging in other physical activities over the course of three hours at her daughters' soccer games. In addition, Dr. Fandos stated that plaintiff's activities were not consistent with the level of pain and degree of disability that she had been claiming, and that he felt that her degree of disability was minimal, if any. (R. 71.)

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal citations and quotations omitted). The ALJ appropriately considered not only plaintiff's testimony, but also the video surveillance evidence and several doctors' medical opinions before reaching her

conclusion regarding plaintiff's disability. The Court notes that the ALJ is in a better position than this Court to evaluate a claimant's credibility, and the ALJ explicitly and specifically articulated the reasons for rejecting plaintiff's testimony. *See Youney v. Barnhart*, 280 F. Supp. 2d 52, 61 (W.D.N.Y. 2003) (citing *Crowley v. Barnhart*, 220 F. Supp. 2d 176, 181 (W.D.N.Y. 2002) (citation omitted)). Accordingly, the Court rejects plaintiff's claim that reversal of the ALJ's decision is warranted due to the ALJ's failure to properly assess plaintiff's credibility and afford plaintiff's testimony proper weight.

Based on the aforementioned evidence, the ALJ concluded that plaintiff lacked the residual functional capacity to perform her past relevant work as a police officer, as specifically performed and as generally performed in the national economy. (R. 22.) In so finding, the ALJ noted that she afforded little probative weight to the opinion of Dr. Fandos that Wright could return to full-duty work as a police officer, because "said opinion concerns vocational issues outside of the physician's area of expertise." (R. 22.) The plaintiff does not contest the ALJ's finding that the plaintiff lacked the residual functional capacity to return to her previous employment. For these reasons, the Court finds that the ALJ's opinion was supported by substantial evidence.

### e. Other Work

At step five, if the claimant is unable to perform her past relevant work, the ALJ determines whether the claimant is capable of adjusting to performing any other work. 20 C.F.R. § 404.1520(g). To support a finding that an individual is not disabled, the Social Security Administration has the burden of demonstrating that other jobs exist in significant numbers in the national economy that claimant can perform. 20 C.F.R. § 404.1560(c); *see also Schaal*, 134 F.3d at 501. The ALJ determined that, based upon plaintiff's residual functional capacity, plaintiff could perform light and sedentary work. (R. 23.)

The ALJ found that there were a significant number of sedentary and light-level jobs available in this economy to plaintiff, a thirty-nine year old with a high school diploma and some college education. (R. 23.) The ALJ noted that light and sedentary unskilled jobs do not require special skills or experience, and plaintiff would be qualified for such employment. (R. 23 (citing Section 202.00(a), App. 2, Subp. P., Part 404)). As a result of the finding that plaintiff was qualified for and physically capable of performing light-level and sedentary jobs, the ALJ found that plaintiff was not disabled, and therefore not entitled to DIB. (*Id.*)

Light work, as defined by 20 C.F.R. § 404.1567(b) "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Light work often involves standing on and off, for a total of approximately six hours of an eight-hour workday. *Id.*; Social Security Ruling 83-10.

Pursuant to 20 C.F.R. § 404.1567(a), sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . [A] certain amount of walking and standing is often necessary in carrying out job duties." Sedentary work also generally

involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day. *Perez*, 77 F.3d at 46 (citing Social Security Ruling 83-10; 20 C.F.R. § 404.1567(a)).

The Court finds that the ALJ's findings were supported by substantial evidence in the record. The videotapes depict plaintiff performing a variety of activities—walking, running, standing, bending, crouching, and squatting without difficulty. (R. 65-66.) Plaintiff was also observed coaching her daughters' soccer teams. While coaching, plaintiff was observed running, bending, lifting items, swinging her arms, carrying equipment, and using a mechanical device to draw lines on the soccer field over the course of a three-hour period. (*Id.*) At no point did plaintiff appear to be in pain or to have difficulty performing any of those activities. Furthermore, the testimony of several doctors indicated that plaintiff was capable of returning to work. Dr. Fandos concluded that plaintiff was capable of returning to work full time as a police officer. (R. 69.) Dr. Rosenberg stated that plaintiff could return to work in a limited duty capacity. (R. 235.) Dr. Essuman recommended that plaintiff continue sedentary employment for three months. (R. 239.)

Plaintiff alleges that additional testimony provided by her doctors in her workers' compensation case justifies plaintiff's receipt of DIB for the time period initially granted by the ALJ. Specifically, plaintiff argues that Dr. Fandos's testimony after viewing the videotapes was that he would change his opinion as to plaintiff's disability, but also that plaintiff's activity would be consistent with the activity of someone who had just had a series of three nerve block injections. (App. A at 33.) Plaintiff also submitted the testimony of Dr. Palumbo that the nerve root injections may have provided plaintiff some short-term relief. (App. C. at 44.) However, the ALJ explicitly found that Dr. Palumbo's opinion based on his examination of plaintiff on December 9, 2005 was belied by the videotapes and the minimal clinical findings present upon examination, including that plaintiff suffered "some tenderness with palpation over the lower lumbar midline segments and somewhat tender sacroiliac joints." (R. 21.); *see Crockett v. Astrue*, 268 F. App'x 120, 122 (2d Cir. 2008) (noting that even the opinion of a claimant's treating physician "'is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'" (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). Moreover, the ALJ was entitled to consider any facts that tended to support or contradict doctors' medical opinions. *See* 20 C.F.R. § 416.927(d)(6). The ALJ adequately discussed medical opinions and explained the weight she assigned to each opinion, in accordance with the code. *See* 20 C.F.R. § 404.1527(f)(2)(ii). The ALJ gave specific and legitimate reasons for rejecting certain medical opinions and favoring others.

Moreover, the ALJ's findings are supported by the inconsistent representations of the plaintiff to the Police Surgeon during the precise time period during which she was observed and videotaped. For example, three days after plaintiff had represented to the Police Surgeon that she could not sit or stand for more than five minutes at a time and could not walk more than one-hundred feet, she was videotaped walking around a Home Show at Nassau Coliseum. (R. 64.) Plaintiff began receiving nerve block injections in April 2004, before she even appealed her initial

application's denial of DIB. (R. 263.) The record does not indicate any representations by plaintiff that the injections provided pain relief or permitted her to be more active on a daily basis.

Based on the foregoing evidence, the Court concludes that the ALJ's determination that plaintiff could perform sedentary and light-level employment was supported by substantial evidence and affirms the ALJ's opinion.[5]

---

[5] To the extent plaintiff also attempts to argue in the alternative that, despite the surveillance videotape evidence, the evidence still supports a finding that she was disabled for at least some earlier portion of the time period covered by the ALJ's initial decision, the Court rejects this contention. In particular, a substantial portion of the evidence relied upon by the ALJ in her initial decision and by plaintiff's doctors in rendering their opinions was the plaintiff's subjective symptoms. Once plaintiff's subjective symptoms were contradicted in an overwhelming fashion by the surveillance video, there was substantial evidence in the record for the ALJ to find that plaintiff's claimed symptoms were not credible during *the entire period* based upon substantial evidence of similar fault discovered during the 2004-2005 period. Plaintiff was seen engaging in activities that she represented that she could not perform. For example, as discussed earlier, although plaintiff had represented to the Police Surgeon that she could not sit or stand for more than five minutes at a time and could not walk more than one-hundred feet, she was observed walking around a Home Show at Nassau Coliseum without difficulty a mere three days later. (R. 64.) On January 26, 2005, plaintiff was observed and videotaped walking, running, and standing without any indication of pain. (R. 57.) Later that same day, when plaintiff entered Police Headquarters for a meeting, she walked with a "pronounced limp." (*Id.*) Thus, given this substantial evidence of exaggeration of symptoms and similar fault by plaintiff, the ALJ could properly refuse to credit

## D. Remand

Plaintiff has included additional deposition testimony from Dr. Fandos, Dr. Palumbo, and Dr. Weiland with her complaint. Plaintiff alleges that this evidence supports a finding that plaintiff was disabled during the time period covered by the ALJ's initial opinion. If a plaintiff presents new evidence supporting his claim for DIB on appeal to a federal district court, the district court has discretion to remand the case for further examination of the evidence. 42 U.S.C. § 405(g) ("[The District Court] may at any time order additional evidence to be taken

---

plaintiff's claimed symptoms for the entire period, as well as refuse to give controlling weight to the opinions of doctors that were based on those claimed symptoms.

Plaintiff's reliance on *Nelson v. Bowen*, 882 F.2d 45 (2d Cir. 1989) and *Balsamo v. Chateer*, 142 F.3d 75 (2d Cir. 1998) is similarly misplaced. In *Nelson*, the Second Circuit stated that "[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals, it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working." 882 F.2d at 49. That case involved a plaintiff who traveled between Vermont and New York to take classes while pursuing a college degree. *Id.* at 46. In the instant case, the evidence before the ALJ did not suggest someone simply enduring pain; rather, the surveillance videotapes provided evidence of plaintiff engaging in physical activities without pain. Moreover, the evidence suggested that plaintiff was capable of performing sedentary or light-level work. Accordingly, these videotapes not only provided substantial evidence of plaintiff's ability to engage in a variety of physical activities without pain despite her representations to the contrary, but the videotapes further provided substantial evidence upon which the ALJ based a finding of similar fault by plaintiff.

before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."). However, the Court may not reverse the Commissioner's decision based on new evidence. *See id.*; *Moscatiello v. Apfel*, 129 F. Supp. 2d 481, 490 (E.D.N.Y. 2001).

In order to remand the case based on additional evidence, the Court must find that the evidence presented by plaintiff is not only new, but also material. In order to be material, the evidence must be relevant to the claimant's condition during the time period for which benefits were denied and present a reasonable possibility that the additional evidence would have resulted in a different determination by the Commissioner. *See Lisa*, 940 F.2d at 43. The Court finds that the additional deposition testimony submitted to this Court by plaintiff does not present a reasonable possibility that the Commissioner would have found plaintiff disabled for the relevant time period. Plaintiff points to Dr. Fandos's testimony that he felt the plaintiff was temporarily, totally disabled during the period from May 27, 2003 through September 7, 2006. However, Dr. Fandos also stated that during the time he treated plaintiff, plaintiff would have been capable of running, squatting, and kneeling. (App. A at 20-22.) Dr. Fandos also stated that plaintiff would have been capable of lifting up to 45 or 50 pounds and could have carried up to 30 to 40 pounds. (*Id.* at 21-22.) Although Dr. Palumbo stated that the nerve root injections received by plaintiff may have provided short-term pain relief for her, he also stated that he felt "misled" by plaintiff after viewing the surveillance videotapes. (App. C at 32.) He further stated that the activities plaintiff was performing were not consistent with the severity of her complaints. (*Id.* at 31-33, 41.) Dr. Weiland's testimony only indicated that he had found no evidence of a neurological disability when he examined plaintiff in March 2004, and that the surveillance videotapes reinforced his conclusion. (App. D at 9-10, 15.)

In short, the additional evidence submitted by plaintiff does not support a remand to the Commissioner for further consideration of the evidence. Although plaintiff points to some helpful testimony by Dr. Fandos and Dr. Palumbo, their depositions also include testimony that supported the ALJ's finding of similar fault and the ALJ's finding that plaintiff was not entitled to DIB for the relevant time period. The new evidence is insufficient to overcome the substantial evidence before the ALJ that indicated that plaintiff was not disabled, and there is no reasonable possibility it would have changed the Commissioner's determination.

\* \* \*

In sum, having carefully reviewed the record, the Court concludes that the Commissioner properly determined that plaintiff was not disabled, and the ALJ's factual findings in connection with that determination are supported by substantial evidence. Moreover, the evidence presented to the District Court does not require a remand because, among other things, there is no reasonable possibility that such evidence would have influenced the Commissioner to decide plaintiff's application for DIB differently.

IV. CONCLUSION

For the foregoing reasons, this Court grants defendant judgment on the pleadings

and affirms the decision of the ALJ. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 1, 2009
Central Islip, New York

\* \* \*

The attorney for plaintiff is Kenneth S. Beskin of Sherman, Federman, Sambur & Levine, LLP, 11 East Main Street, Bay Shore, NY 11706. The attorney for defendant is Thomas A. McFarland, Assistant United States Attorney, Eastern District of New York, 610 Federal Plaza, 5th Floor, Central Islip, New York, 11722-4454.